UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KANA CRUMBY                                                          PLAINTIFF

v.                                                    Civil No. 1:17-cv-00076-GHD-DAS

LIFECORE HEALTH GROUP, LLC                                          DEFENDANT

---

## MEMORANDUM OPINION

Plaintiff Kana Crumby alleges that while she was employed with Defendant Lifecore, her supervisor sexually harassed her and that Lifecore terminated her in retaliation for reporting the harassment. The Court now has before it Lifecore's Motion for Summary Judgment [43]. Crumby has responded, and the motion is ripe for review. For the reasons set forth below, the Court finds the motion should be granted.

### Background

Lifecore is a healthcare system that provides mental health services. In May 2015, Crumby began working with Lifecore as a therapist.

Crumby's immediate supervisor, Victoria Boatman, began making sexual advances toward her. Among other things, Boatman bought Crumby several gifts that she did not buy for other employees, including one for Valentine's Day, rubbed her breasts against Crumby's back, and sent Crumby an email containing sexual innuendo. Boatman also made racially insensitive comments towards a black co-worker, Denika Poole.

Eventually, Crumby and Poole decided to report Boatman's behavior. Crumby and Poole each submitted a written statement to Marty Polk, Lifecore's human resources manager. Crumby and Poole then met in person with Polk, and in that meeting, Crumby described the sexual

1

harassment Boatman inflicted upon her. Over the next several days, Crumby met with members of Lifecore's management to discuss Boatman's harassment.

After learning of Boatman's actions, Lifecore placed her on an administrative leave while they investigated. During the investigation, Boatman resigned from Lifecore. According to Rita Berthay, Lifecore's chief operating officer, had Boatman not resigned, she would have been terminated. Lifecore informed Crumby that Boatman was no longer employed with them.

About a month later, Crumby's new supervisor, Jessica Stevens, and another member of Lifecore's management, Sheila Murphree, attempted to reach Crumby by phone for several hours, but were unable to do so. When they eventually talked to her, Crumby told Murphree that she had been away from home working on notes. Murphree began a review of Crumby's documentation in Lifecore's electronic medical records system. The review showed that Crumby had not been working on documentation that day as she had said. The review also revealed another occasion where she had documented an hour and fifteen minutes spent with a client and another therapist, while the therapist claimed that Crumby had only been there fifteen minutes. Crumby disputed the therapist's account. Finally, the review found that Crumby had marked an appointment as "kept" when in reality the notes revealed the client had not shown up for the appointment. This appointment was billed to an insurance provider.

Stevens compiled a disciplinary action for Crumby for documenting time spent working when she was not, and Crumby was placed on a probationary status. Stevens then performed further audits on Crumby's billing records, and found additional instances from the previous twelve months where Crumby had billed "kept appointments" when the client did not show. As a result of these incorrect bills, Lifecore was forced to refund Medicaid and a grant that funded Crumby's position. Stevens presented her findings to Berthay, who decided to terminate Crumby.

Crumby filed a charge of discrimination with the EEOC, received a right to sue notice, and then timely filed this Title VII suit alleging that Lifecore is responsible for the sexual harassment she endured from Boatman, and alleging that Lifecore retaliated against her for reporting the harassment by firing her. Lifecore moved for summary judgment.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action'." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s]

3

factual controversies in favor of the nonmoving party, but only where there is an actual contro-

versy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First*

*Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402

F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v.*

*Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*,

476 F.3d 337, 343 (5th Cir. 2007)).

## Analysis

### I.    Sexual Harassment

Crumby first claims that Lifecore is vicariously liable for Boatman's harassment. The ini-

tial question in determining whether an employer is vicariously liable for sexual harassment by a

supervisor is whether a tangible employment action has occurred. If so, the claim is considered a

quid pro quo claim. *Casiano v. AT&T Corp.* 213 F.3d 278, 283 (5th Cir. 2000). In such a case an

employer will be liable for sexual harassment if the plaintiff establishes that the tangible employ-

ment action occurred as result of his or her acceptance or rejection of the harassment. *Id.*

When no tangible employment action occurs, the claim is considered a hostile work envi-

ronment claim. *Id.* at 284; *EEOC v. Boh Bros. Const. Co., L.C.C.*, 431 F.3d 444, 452 (5th Cir 2013)

(citing *Vancee v. Ball State Univ.* 570 U.S. 2421, 452, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013)).

There, an employer will be liable if the harassment is sufficiently severe and pervasive. *Casiano*,

213 F.3d at 284. In a hostile work environment case, the employer may affirmatively establish the

*Ellerth/Faragher* defense: that it exercised reasonable care to prevent or correct the harassment

and that the employee unreasonably failed to take advantage of any preventative or corrective

opportunities provided. *Id.*; *Boh Bros*, 431 F.3d at 452.

4

Crumby argues that she is making both hostile work environment and quid pro quo harassment claims. She argues that Boatman's harassment created a hostile work environment and she was ultimately fired for reporting (and therefore, rejecting) it. Thus, she argues, there was a tangible employment action that flowed from the harassment. Quid pro quo and hostile work environment sexual harassment, however, are not separate causes of action—rather, they "illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S. Ct. 2257, 2265, 141 L. Ed. 2d 633 (1998). Here, there is no allegation that Boatman actually made an adverse employment action against Crumby as a result of Crumby's rejection of the harassment. Her claim, at least concerning her termination, is really a retaliation claim, because it flows from a protected activity under Title VII. The Court therefore will analyze the harassment claim under the hostile work environment framework.

a. *Prima Facie Case*

To establish that an immediate superior created a hostile work environment under Title VII, an employee must show "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)).

"To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal–Mart Stores Tex. Lp*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L.Ed. 2d 49 (1986)).

5

Lifecore argues that Crumby cannot establish the harassment Boatman inflicted upon her was sufficiently pervasive or severe. Determining whether conduct is sufficiently pervasive or severe requires the Court to consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and whether the complained of conduct undermined the plaintiff's workplace competence." *Lauderdale*, 412 F.3d at 163 (citations and internal quotation marks omitted). The more severe, harassing, or serious the conduct, the less frequent it must be; conversely, "frequent incidents of harassment, though not severe," can become enough to alter the terms, conditions, or privileges of employment. *Id.*

Crumby alleges the following incidents occurred between her and Boatman. She alleges that Boatman would show up at Crumby's house at all hours of day. Several times at work Boatman came up behind her and rubbed her breasts on Crumby's back. On another occasion Boatman wore a short skirt and asked Crumby to help her fix her panty hose. Boatman would also wear revealing tops and lean over the table toward Crumby attempting to get Crumby to look at her breasts. Boatman also purchased a Valentine's Day and other gifts for Crumby. Once, Boatman informed Crumby that they would have to attend a conference together, and attempted to share a room with her. Finally, Boatman sent an email to Crumby implying that she wished to perform oral sex on Crumby. Crumby Dep. at 48-51; Pool Dep. at 11-13.[1]

---

[1] Crumby also claims that she received continued harassment after she reported Boatman's conduct and after Boatman resigned. This took the form of other Lifecore employees making multiple negative comments to her. Crumby, however, admits that this harassment appeared to stem from her reporting of Boatman, and not her sex. Thus, it has no bearing on her initial claim of sexual discrimination arising from Boatman's conduct.

This conduct ranges from non-severe, but frequent (Boatman rubbing her breasts on Crumby and the gift buying) to severe one-time incidents (Boatman's email to Crumby.) The Court finds that all this conduct, taken together, is enough that a jury could find it sufficiently pervasive or severe. *See, e.g. Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) (evidence that co-worker "grabbed [plaintiff] and kissed her on the cheek, popped rubber bands at her breasts, fondled her breasts 'numerous times,' patted her on her buttocks 'numerous times,' and came behind her and rubbed her his body against her" created a genuine issue of material fact about severity and pervasiveness of conduct.) Thus, Crumby can establish a prima facie case of a hostile work environment.

b. *Ellerth/Faragher Defense*

Lifecore next argues that even if Crumby can make prima facie case, there is no factual dispute that it has established the *Ellerth/Faragher* defense. Under this defense, an employer may escape vicarious liability for otherwise actionable harassing conduct by a supervisor if the employer shows that "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff-employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Boh Bros.*, 731 F.3d at 462 (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999)).

An employer may satisfy the first prong by showing that it instituted specific "institutional policies and educational programs regarding sexual harassment." *Id.* at 462–63 (citing *Lauderdale*, 512 F.3d at 164). This includes providing a complaint procedure and instructing employees on how to make use of that procedure. *Id.* at 463 (citing *Walker v. Thompson*, 214 F.3d 615, 627 (5th Cir.2000)).

Here, Lifecore maintained an anti-harassment policy that specifically addressed sexual harassment. Excerpts from Lifecore Employee Handbook [43-5] at 99–100. The policy "forbids unwelcome sexual advances, requests for sexual favors, and verbal or physical conduct of a sexual or gender related nature . . ." It then goes on to inform employees to whom reports of sexually harassing behavior should be made. *Id.* at 100. Crumby acknowledged that she received and read the harassment policy. Harassment Policy Sign-off Sheet [43-4].

Additionally, as Crumby acknowledged, Lifecore suspended Boatman so that it could investigate Crumby's allegations immediately after she reported Boatman's behavior to Polk. There is no evidence that contradicts Berthay's assertion that she decided to terminate Boatman and would have had Boatman not resigned first. Thus, there is no genuine issue of material fact that Lifecore exercised reasonable care to prevent and correct the harassing behavior. Lifecore satisfies the first prong of the *Ellerth/Faragher* defense.

To establish the second prong, an employer may show that an employee unreasonably failed to report harassing behavior using the employer's complaint procedures. *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 301 (5th Cir. 2005). "[A] demonstration of such failure [to use any complaint procedure] will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

Lifecore has also established that Crumby did not reasonably make use of Lifecore's preventative or corrective opportunities. Despite being aware of the policy, Crumby did not report Boatman's harassment until long after it had begun. *See e.g. Casiano*, 213 F.3d at 287 (holding plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities" because he "never reported any of the [harassing] incidents until months" after they had ended);

*Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969 (5th Cir. 1999) (holding teacher unreasonably failed to make use of preventative and corrective policies because she waited almost a year before complaining about principal's harassment).

Crumby offers no reason why she did not report sooner other than a general fear of further harassment. As this Court has previously said, "[a]ll harassment victims risk retaliation when they complain." *Young v. R.R. Morrison and Son, Inc.,* 159 F. Supp. 2d 921, 927 (N.D. Miss. 2000). The *Ellerth/Faragher* defense encourages employers to proactively prevent and stop the harassment of subordinates by their supervisors. That goal cannot be reached if the employer never knows the harassment is occurring. Thus, unless an employee can show "objective evidence that some significant retaliation will take place," the employee must give the employer an opportunity to correct the harassing behavior. *Id.*; *Harper,* 149 F. App'x at 302. There is no such objective evidence occurring before Crumby reported Boatman that shows Lifecore would have retaliated against Crumby. Therefore, she unreasonably failed to make use of Lifecore's corrective procedures, and Lifecore satisfies the second prong of the *Ellerth/Faragher* defense.

Because there is no factual dispute that Lifecore took reasonable steps to end the harassment and that Crumby unreasonably failed to make use of Lifecore's policies and procedures, Crumby's sexual harassment claim fails.

## II.    Retaliation

Crumby also alleges that Lifecore retaliated against her for reporting the harassment by firing her several weeks later. Lifecore concedes that Crumby could establish a prima facie case of retaliation. Lifecore argues, however, that it has established a non-retaliatory reason for firing Crumby and that she cannot provide evidence that the reason is pretextual.

"A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396,

400 (5th Cir. 2013). Under that framework, once an employee establishes a prima facie case of discrimination, the employer must articulate a "legitimate non-discriminatory reason for the employment action." *Id.*

Lifecore has provided such a legitimate non-discriminatory reason. Lifecore asserts that it terminated Crumby for falsifying billing statements. Lifecore found multiple instances where Crumby documented a kept appointment, even though the patient had failed to show up for the appointment. According to Lifecore, because Crumby documented them as kept appointments, Lifecore improperly billed for them when they otherwise would not have.

Once the employer establishes a legitimate reason for the adverse employment action, the burden returns to the employee, who must "establish that the employer's stated reason is actually a pretext for discrimination." *Royal*, 738 F.3d at 400. A plaintiff may create a fact issue by showing "that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). Ultimately, the plaintiff must establish that "the adverse employment action taken against [her] would not have occurred 'but for' [her] protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)

Crumby concedes that at least some of her time was billed incorrectly. She argues, however, that the incorrect bills were just a pretextual excuse to fire her for reporting the harassment. She claims that she was never properly trained on using the billing software, that other therapists were billing improperly, that other employees that made similar mistakes were not fired, that a supervisor was supposed to catch her mistakes, and that she did not intentionally bill incorrectly.

Despite these arguments, Crumby is unable to offer evidence that Lifecore's stated reason is pretextual. She points to a statement made after Boatman's resignation by Richard Fraga,

Lifecore's CEO, to members of the therapy staff, where he told them that he would not "tolerate anymore tattletaling." Crumby Dep. at 64. However, Crumby acknowledged that it was Rita Berthay who had the final authority to fire her. Pl. Mem. In Opp. [48] at 3. Crumby does not provide any evidence that Berthay held a discriminatory animus towards her or that Fraga influenced Berthay's decision.

Much of Crumby's arguments concern her confusion and difficulty for billing for group sessions, and she claims that other therapists were also billing improperly. The only evidence she provides is the testimony of a co-worker who stated that he had made mistakes in the billing system and was allowed to fix them. Thomas Walker Dep. [47-26] at 13–17. But that employee never testified that he had incorrectly billed for appointments that were not kept, and in fact, testified that he had never made the particular errors Crumby made. *Id.* at 14. Additionally, Berthay testified that that other employees who did make the same billing errors as Crumby were terminated. Rita Berthay Dep. [47-5] at 19-21. Crumby provides no evidence to rebut that testimony.

Finally, while Crumby's claims that she was not trained well, that her billing errors were unintentional, and that a supervisor should have caught them may suggest that Lifecore's decision to terminate her was unfair, it is not evidence that the decision was discriminatory. Title VII is not a "vehicle[] for judicial second-guessing of business decisions." *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (quoting *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)). Because Crumby cannot establish that Lifecore's stated reasons for firing were a pretext for another discriminatory motive, she ultimately cannot prove her retaliation claim. Accordingly, the claim is dismissed.

## Conclusion

While Crumby may be able to establish a prima facie case of a hostile work environment based on sexual harassment, there is no factual dispute that Lifecore took steps to end the sexual

11

harassment once she reported it to management. Additionally, Crumby cannot create a genuine issue of material fact disputing the truth of Lifecore's reasons for firing her. Accordingly, her sexual harassment and retaliation claims fail. The motion is granted and her claims are dismissed.

A separate order shall issue.

This, the 14ᵗʰ day of August, 2018.

_____
SENIOR U.S. DISTRICT JUDGE